IN THE UNITED STATES DISTRICT COURT OF THE
MIDDLE DISTRICT OF ALABAMA

FREDDIE EUGENE WOOD )
    Plaintiff, )
   )
   ) CASE# 2:17-cv-494-WC
Vs. )
   )
JACKSON HOSPITAL, ET AL )
JOE RILEY, JACKSON HOSPITAL CEO )
DR. MAHER FARAH, DR. RICHARD SAMPLE, )
DR. STEVEN G. O'MARA, ET al... )
ALABAMA BOARD OF MEDICAL EXAMINERS, )
STAN INGRAM. )
    Defendant(s) )

RECEIVED
2017 JUL 21 P 4: 02
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW**, Freddie Eugene Wood, "Plaintiff", through its undersigned attorney, alleges upon personal knowledge as to Plaintiff, and upon information and belief as to all matters, as follows:

### NATURE OF ACTION

This is a civil action brought against Defendants Jackson Hospital ("the Hospital"), Joe Riley ("Mr. Riley"), Dr. Maher Farah ("Dr. Farah"), Dr. Richard Sample ("Dr. Sample"), and Dr. Steven O'Mara ("Dr. O'mara") for negligent treatment of the Plaintiff and creating false accusation against the Plaintiff. This civil action is also brought against the Alabama Board of Medical Examiners ("the Board") and Stan Ingram ("Mr. Ingram") for breach of fiduciary duty to the Plaintiff and fraudulent misrepresentation of information to medical entities concerning the Plaintiff.

### PARTIES

1. Plaintiff Freddie Eugene Wood is a resident and citizen of Alabama whom is over the age of 19. The Plaintiff resides in Montgomery County, Alabama, within the jurisdiction of the

   Middle District of Alabama.

2. Defendant Jackson Hospital & Clinic, Inc., is a domestic non-profit organization, incorporated in the State of Alabama. The Hospitals principal place of business at

3. 1725 Pine Street, Montgomery, Alabama 36106. The Hospital provides medical services to individuals in the State of Alabama. The Hospitals principal place of business is within the jurisdiction of the Middle District of Alabama.

4. Joe Riley is a resident and citizen of Alabama. Mr. Riley resides in the jurisdiction of the Middle District of Alabama. Mr. Riley is the Chief Executive Officer of the Hospital.

5. Dr. Richard L. Sample is a physician licensed by the Alabama Board of Medical Examiners. Dr. Sample practices in Montgomery, Alabama, and is contracted with the Hospital to provide medical care to individuals within the State of Alabama. Dr. Sample resides in the jurisdiction of the Middle District of Alabama.

6. Dr. Maher Farah is a physician licensed by the Alabama Board of Medical Examiners. Dr. Farah practices in Montgomery, Alabama, and is contracted with the Hospital to provide medical care to individuals within the State of Alabama. Dr. Farah resides in the jurisdiction of the Middle District of Alabama.

7. Dr. Steven O'Mara is a physician licensed by the Alabama Board of Medical Examiners. Dr. O'Mara practices in Montgomery, Alabama, and is contracted with the Hospital to provide medical care to individuals within the State of Alabama. Dr. O'Mara resides in the jurisdiction of the Middle District of Alabama.

8. Alabama Board of Medical Examiners is an agency created by the Alabama State Legislation to regulate the practice of medicine in the State of Alabama. The Board's primary place of business is 848 Washington Ave., Montgomery, Alabama, 36104. The Board is within the jurisdiction of the Middle District of Alabama.

9. Stan Ingram, who is the Chief Investigator with the Alabama Board of Medical Examiners who's primary place of business is 848 Washington Ave., Montgomery Alabama, 36104.

Stan Ingram falls in the jurisdiction of the Middle District of Alabama.

## JURISDICTION AND VENUE

10. This action brings claims based upon the Defendant(s) violation of 42 U.S.C. § 12102 and 42 U.S.C. 1395. Therefore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

11. The state law claims are also properly before this court based upon supplemental jurisdiction under 28 U.S.C. § 1367 as the state law claims form part of the same case or controversy as the federal claims as they are based upon substantially similar and overlapping facts.

12. All Defendants either reside, have their principal place of business, or work within the jurisdiction of the Middle District of Alabama. Furthermore, all events giving rise to this claim took place within the jurisdiction of the Middle District of Alabama. Therefore, venue is proper in the Middle District of Alabama under 28 U.S.C. § 1391 (b).

## FACTUAL ALLEGATIONS

13. On August 17th, 2015 on or about between the hours of 1:00 or 1:30 a.m. in the morning, the Plaintiff went to the Hospital Emergency Room for back pain and high blood pressure.

14. The Plaintiff was triaged and taken to a room and placed on a gurney that was next to the wall. After a brief wait, a male subject came into the room who did not introduce himself who later would be identified as Dr. Sample.

15. During the encounter the Dr. Sample immediately, very aggressively, harassed, and intimidated the Plaintiff to the point where the Plaintiff became fearful of his safety.

16. On or about December 5th, 2015, the Plaintiff received notice from his primary care physician of the termination of his services.

17. On or about December 7th, 2015, the Plaintiff spoke with Nurse Alexis Gouston about a letter he received through the mail.

18. This letter stated that on November 26, 2015, that the Plaintiff became belligerent at the

Hospital and had to be escorted by security.

19. On or about March 16, 2016, the Plaintiff spoke with Terry Reid, the security chief of the Hospital, and inquired about the incident discussed in the letter.

20. According to Terry Reid, there was no such incident that took place concerning the Plaintiff on November 26, 2015.

21. On or about September 20, 2015, the Plaintiff was contacted by Joey Hobbs, Director of Emergency Department for the Hospital, indicating that Dr. Sample was suspended for 21 days without pay.

22. On or about December 1, 2015, Plaintiff discovered that no such punishment occurred.

23. On or about March 10, 2016, the Plaintiff discovered that the attending physicians name had changed from his August 17, 2015, visit.

## FIRST CAUSE OF ACTION

## [NEGLIGENCE]

24. Allegations set forth in paragraph 1 thru 23 of this Complaint are realleged and incorporated by reference as if sully set forth herein.

25. On or before August 17, 2015, the Plaintiff visited the Hospital's emergency room.

26. The Plaintiff was seen by Dr. Sample during his August 17, 2015, visit.

27. During this visit, Dr. Sample became very aggressive with the Plaintiff. Due to Dr. Sample's aggression, the Plaintiff became fearful of his life.

28. During the August 17, 2015, visit, Dr. Sample refused to treat the Plaintiff.

29. On August 17, 2015, Dr. Sample had a duty to treat the Plaintiff when he entered the Hospital's emergency room.

30. Dr. Sample breached this duty by aggressively mistreating the Plaintiff and failing to treat the Plaintiff's symptoms.

31. Due to Dr. Sample's negligence, the Plaintiff was forced to remain in pain and seek other medical attention.

## SECOND CAUSE OF ACTION

## NEGLIGENT SUPERVISION]

32. Allegations set forth in paragraph 1 thru 31 of this Complaint are realleged and incorporated by reference as if fully set forth herein.

33. On August 17, 2015, the Plaintiff was seeking treatment at the Jackson Hospital Emergency Room.

34. The Plaintiff was seen by Dr. Sample while he was at the Hospital Emergency Room.

35. During this visit, Dr. Sample became very aggressive with the Plaintiff and refused to treat him.

36. On information and belief, Dr. Sample has become overly aggressive and intimidating with a number of the Hospital's patients.

37. On information and belief, several patients have filed complaints with the Hospital against Dr. Sample for being overly aggressive and intimidating.

38. On information and belief, these complaints were due to the reckless treatment of Hospital's patients by Dr. Sample.

39. The Hospital knew of Dr. Sample's actions because all complaints must be filed with the Hospital.

40. Dr. Sample is an emergency room physician for the Hospital.

41. Being in this position, the Hospital entrusts the care of their patients to Dr. Sample.

42. Due to Dr. Sample's recklessness, patients have been mistreated in the Hospital's emergency room.

43. It is the Hospital's duty to make sure all patients are treated with the utmost care from their hired staff.

44. The Hospital has breached this duty by allowing Dr. Sample to recklessly mistreat its

patients, in which the Hospital had knowledge of through formal complaints.

45. The Plaintiff has received damage due to the Hospital's breach of duty.

## THIRD CAUSE OF ACTION

## [FRADULENTMISREPRESENTATION]

46. Allegations set forth in paragraph 1 thru 45 of this Complaint are realleged and incorporated by reference as if fully set forth herein.

47. Defendant Dr. Sample committed fraud by misrepresentation of the material fact that he was not the physician on the day of August 17, 2015, that failed to properly treat the Plaintiff due to him being disabled.

48. On or before August 17, 2015, the Plaintiff went to the Hospital for treatment.

49. On this visit, Dr. Sample was his attending physician in the Hospital's emergency room.

50. The Plaintiff was denied treatment by Dr. Sample at his Hospital visit.

51. On or before March 10, 2016, the Plaintiff obtained a copy of his medical records.

52. In his medical records, the Plaintiff discovered that the attending physician from his August 17, 2015, had been changed from Dr. Sample to Dr. Farah.

53. On information and belief, Dr. Sample altered the records from the Plaintiff's August 17, 2015, emergency room visit to change himself from the attending physician to Dr. Farah.

54. This is a false representation of a material fact to both the Plaintiff and his insurance provider.

## FOURTH CAUSE OF ACTION

## [FRADULENT MISREPRESENTATION]

55. Allegations set forth in paragraph 1 thru 54 of this Complaint are realleged and incorporated by reference as if fully set forth herein.

56. Defendant Dr. Farah committed fraud by misrepresentation of a material fact by falsely

indicating he was the physician that was present instead of Dr. Sample on the date of August 17, 2015.

57. On information and belief, Dr. Farah knew of the fraudulent misrepresentation of Dr. Sample, and agreed to the fraudulent misrepresentation.

58. This is a false representation of a material fact to both the Plaintiff and his insurance provider.

## FIFTH CAUSE OF ACTION

## [FRADULENT MISREPRESENTATION]

59. Allegations set forth in paragraph 1 thru 58 of this Complaint are realleged and incorporated by reference as if fully set forth herein.

60. The Hospital committed fraud by misrepresentation by the falsification of visits on August, 17, 2015.

61. On the above date, the Plaintiff was seen in the Hospital emergency room by Dr. Sample.

62. On or before March 10, 2016, the Plaintiff obtained his medical records and Dr. Farah was the attending physician and not Dr. Sample.

63. The Hospital keeps a record of all visits to their facility, noting the doctor who visited the patient.

64. The Plaintiff filed a complaint with the Hospital about the actions of Dr. Sample on the day in question.

65. On information and belief, after the filing of this compliant, the Hospital allowed Dr. Sample to alter the Plaintiff's medical records.

66. The alteration is a false representation of material fact to both the Plaintiff and his insurance provider.

## SIXTH CAUSE OF ACTION

## [FRADULENT MISREPRESENTATION]

67. Allegations set forth in paragraph 1 thru 66 of this Complaint are realleged and incorporated by reference as if fully set forth herein.

68. On or before November 26, 2015, the Hospital committed fraud by falsely representing that the Plaintiff was denied treatment due to belligerent acts on their property and filed false reports on the Plaintiff's insurance.

69. On or before December 7, 2015, the Plaintiff received a letter stating that he had visited the Hospital and has to be escorted away by security due to his belligerent actions on the day of November 26, 2015.

70. On or before March 16, 1016, the Plaintiff contacted Terry Reid, the then head of security for the Hospital, about the incident on November 26, 2015.

71. No such incident was recorded by the hospital on November 26, 2015, but the Plaintiff's insurance was charged for the day of services.

72. This incident was reported to Dr. Ogumbi, which was the Plaintiff's primary care physician.

73. Due to this false statement, the Plaintiff has lost his primary care physician and has been denied treatment by other physicians. He also has false medical charges on his insurance.

## SEVENTH CAUSE OF ACTION

## [LIBEL]

74. Allegations set forth in paragraph 1 thru 73 of this Complaint are realleged and incorporated by reference as if fully set forth herein.

75. On or before December 5TH, 2016, the Plaintiff received a letter from the Hospital.

76. On or before December 7th, 2016, The Plaintiff was informed by Dr. Ogumbi's nurse, Alexis Gouston, that they were informed that he had become belligerent at the Hospital on November 26, 2015, and had to be escorted off the premises.

77. On or before March 16, 2016, the Plaintiff spoke with Terry Reid concerning the incident that took place on November 26, 2015.

78. In this conversation, Terry Reid stated "Let me check the reports" and then he stated in part of the conversation "we do what it is a cold call, he could see anything and that there was no such incident report that took place on that date."

79. The Hospital carelessly and intentionally published a false statement in regards to the Plaintiff's behavior and demeanor on or before November 26, 2015.

80. The false statement published by the Hospital tainted the Plaintiff's reputation in that it was placed in the file.

81. The tainting of the Plaintiff's reputation has caused the Plaintiff to refused for treatment by a physician as well as have his primary physician.

## EIGTH CAUSE OF ACTION

### [NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS]

82. Allegations set forth in paragraph 1 thru 81 of this Complaint are realleged and incorporated by reference as if sully set forth herein.

83. The Plaintiff suffered emotional distress due to the infliction by the Defendants listed herein.

84. Dr. Sample inflicted emotional distress, but failure to properly treat, diagnose the Plaintiff.

85. Dr. Sample also inflicted said distress through verbal abuse and physical intimidation.

86. The Defendants hereby through libel created said distress and in doing so also provided such false information to his primary care physician who in return severed his role as primary physician.

87. The Plaintiff being on disability and Social Security required the Plaintiff to

conduct an exhaustive search for a physician that would accept the type of insurance available to the Plaintiff, which is Medicare.

## NINTH CAUSE OF ACTION

## [NEGLIGENCE]

88. Allegations set forth in paragraph 1 thru 89 of this Complaint are realleged and incorporated by reference as if fully set forth herein.

89. Defendant The Alabama Board of Medical Examiners, "the Board" had a duty to use reasonable in the investigation of the Hospital, Dr. Sample, and Dr. Farah.

90. This due was to investigate the actions of the above listed individuals, while protecting the rights and confidentially of the Plaintiff.

91. The Board breached this due by allowing the above listed Defendant's to alter medical records, release false documents against the Plaintiff, and bill the Plaintiffs insurance for false doctor visits.

92. The Board further breached their duty by allowing the investigation of the above Defendants to be performed by associates of the Defendants, Larry Dixon and Stan Ingram.

93. The Board also breached its duty by allowing Stan Ingram to distribute medical documents of the Plaintiff to other physicians, with false medical information.

94. Due to these breaches, the Plaintiff has taken damage to his reputation and rights as a patient.

## TENTH CAUSE OF ACTION

## [FRADULENT MISREPRESENTATION]

95. Allegations set forth in paragraph 1 thru 94 of this Complaint are realleged and incorporated by reference as if fully set forth herein.

96. The board committed fraud by allowing its investigators, Stan Ingram, to publish documents to physicians containing false medical information.

97. On information and belief, these documents contained information relating to the false visit of the Plaintiff to the Hospital on November 26, 2015.

98. On information and belief, these documents contained falsified information concerning the visit by the Plaintiff the Hospital's emergency room on August 17, 2015, in which Dr. Sample's name was replaced with Dr. Farah.

99. On information and belief, these documents contained the medical information and history of another individual, and not the Plaintiff, violating HIPPA.

100. Due to the fraudulent misrepresentation of the Board, the Plaintiff has lost many primary care physician.

## ELEVENTH CAUSE OF ACTION

## [LIBEL]

101. Allegations set forth in paragraph 1 thru 100 of this Complaint are realleged and incorporated by reference as if fully set forth herein.

102. The Board committed libel by allowing its investigators, Stan Ingram, to intentionally publish false information to physicians about the Plaintiff.

103. This false information, listed in 88 – 100 above, tainted the reputation of the Plaintiff and caused him to lose many primary care physicians and be scrutinized by others in the medicine field.

104. Due to intentionally releasing this false information, the Plaintiff was forced to suffer in pain due to him not being able to gain medical treatment.

## TWELTH CAUSE OF ACTION

## [TORTIOS INTERFERENCE WITH A BUSINESS RELATIONSHIP]

105. Allegations set forth in paragraph 1 thru 104 of this Complaint are realleged and incorporated by reference as if fully set forth herein.

106. The Board tortious interference with the business relationship between the Plaintiff and his primary care physicians.

107. On information and belief, the Plaintiff lost his primary care physicians due to the libel and fraudulent information published by its investigator.

108. The loss of this relationship left the Plaintiff with no primary care physician and a lack of medical care.

109. The loss of this relationship also caused the Plaintiff to spend many hours searching for a new primary care physician.

### THIRTEENTH CASE OF ACTION

### [VIOLATION OF THE DISIABILITY ACT]

110. Allegations set forth in paragraph 1 thru 109 of this Complaint are realleged and incorporated by reference as if fully set forth here.

111. The Plaintiff falls under the protection of the disability act as defined by 42 U.S.C.A. § 12102

112. The Plaintiff is a disabled former law enforcement officer and is on Social Security and has Medicare Insurance.

113. The Disability arrives for a severe fire accident which created extreme extensive damage.

114. The Plaintiff alleges that all parties failed to treat, diagnose, and investigate due to his being a disabled patient on Medicare.

### FIFTEENTH CAUSE OF ACTION

### [VIOLATION OF THE SOCIAL SECURITY ACT]

115. Allegations set forth in paragraph 1 thru 114 of this Complaint are realleged and incorporated by reference as if fully set forth here.

116. The Plaintiff falls under protection and cause of action set forth here as defined by Sec. 1867. [42 U.S.C. 1395dd]

...

individual of such examination and treatment, but the individual (or a person acting on the individual's behalf) refuses to consent to the examination and treatment. The hospital shall take all reasonable steps to secure the individual's (or person's) written informed consent to refuse such examination and treatment.

118. All Defendants listed herein violated this act by or through their actions.

## JURY DEMAND

119. Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff respectfully praise that judgement be entered against the Defendant's for the following:

120. An award for statutory damages.

121. An award for actual and compensatory damages for $6,000,000.00.

122. An award for punitive damages.

123. An award for costs of this action including expenses, together with reasonable attorney's fees.

*/s/ Ted Pearson*

Ted Pearson (PEA-005)
OF COUNSEL:
Ted Pearson
P.O. Box 55115
Birmingham, Al 35255-5115
Phone: (205) -936- 9582
tedpearson.attorney@gmail.com
michaeldixonlegal@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email on this the 21st day July, 2017

Jackson Hospital
c/o
L. Peyton Chapman, III
Post Office Box 270
Montgomery, AL 36101-0270

Joe Riley, Ceo
c./o
L. Peyton Chapman, III
Post Office Box 270
Montgomery, Al 36101-0270

Dr. Maher Farah
1725 Pine St.
Montgomery, Al 36106

Dr. Richard Sample
1725 Pine St.
Montgomery, Al 36106

Dr. Steven G. O'Mara
1725 Pine St.
Montgomery, Al 36106

Alabama Board of Medical Examiners
848 Washington Ave,
Montgomery, Al 36104

Stan Ingram
848 Washington Ave
Montgomery, Al 36104

Ted Pearson (PEA-005)