IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FREDDIE EUGENE WOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:17-cv-494-MHT-DAB |
| | ) | |
| JACKSON HOSPITAL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

In his twenty-four count amended complaint,[1] Plaintiff Freddie Eugene Wood sues Defendants, Jackson Hospital, Joe Riley, Dr. Maher Farah, Dr. Richard Sample, Dr. Steven O'Mara, Alabama Board of Medical Examiners, and Stan Ingram for federal and state law claims arising out of an incident (and subsequent events) on August 17, 2015, when Plaintiff sought medical treatment from Jackson Hospital's emergency department.  This case is again before the court on Defendants' motions to dismiss the amended complaint (Docs. 47, 48, 49).  The parties have been afforded the opportunity to fully brief the matters.  For the reasons stated below, the undersigned **RECOMMENDS** the motions to dismiss (Docs. 47, 48, 49) be **granted**

---

[1] There are only twenty-three numbered counts, but a total of twenty-four counts, as there are two counts labeled count 17.  *See* Doc. 42.

**as to the federal claims and that the Court decline to exercise jurisdiction over the state law claims**. Should the Court wish to reach the merits of the state claims, they should also be dismissed.

## I.    JURISDICTION

The court's subject matter jurisdiction is invoked under 28 U.S.C. § 1331 as to Plaintiff's federal causes of action. The court may exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Defendants Jackson Hospital and its CEO Joe Riley contest personal jurisdiction.[2] The parties do not contest venue, and the court finds sufficient information of record to support venue.   *See* 28 U.S.C. § 1391.   On October 3, 2017, this matter was referred to the undersigned for review by United States District Judge Myron H. Thompson. (Doc. 23); *see also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Bd. of Educ. of State of Ga.,* 896 F.2d 507 (11th Cir. 1990).

## II.    LEGAL STANDARDS

---

[2] Jackson Hospital and Joe Riley raise lack of personal jurisdiction as a basis to dismiss claiming they were improperly served through counsel which is insufficient under Rule 4.  (Doc. 49 at 3 n.1).  Federal Rule of Civil Procedure 4 "is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint."  *Sanderford v. Prudential Ins. Co. of Am.*, 902 F.2d 897, 900 (11th Cir. 1990) (citations omitted).  Receipt of actual notice is significant, however, only if "service was in substantial compliance with the formal requirements of the Federal Rules."  *Villafana v. Auto-Owners Ins*., No. CIV.A.06 0684 WS B, 2006 WL 3834276, at *2 (S.D. Ala. Dec. 29, 2006) (quoting *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 925 n.14 (11th Cir. 2003)).

Federal Rule of Civil Procedure 8 provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The pleader must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[D]etailed factual allegations" are not required, but mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

## III.   PROCEDURAL AND FACTUAL BACKGROUND[3]

Plaintiff filed this lawsuit against Defendants on July 21, 2017.  (Doc. 1).  In his initial complaint, he raised federal and state law claims.  Defendants moved to dismiss Plaintiff's complaint (Docs. 9, 12, 13), and the court heard argument on October 25, 2017.  On March 6, 2018, the court granted Defendants' motions to dismiss and allowed Plaintiff leave to file an amended complaint.   (Doc. 40). Plaintiff filed his amended complaint March 20, 2018.  (Doc. 42).  As pled by Plaintiff, the amended complaint brings federal claims under "the Americans with Disabilities Act of 1990 as Amended Title II--Public Services, Americans with

---

[3] The factual background is taken from Plaintiff's Amended Complaint (Doc. 42).

Disabilities Act of 1990 as Amended Title III, 42 U.S.C. § 12102 Disability Discrimination, 42 U.S.C. § 1132, 42 U.S.C. § 12182, Section 54 of the Rehabilitation Act of 1973, Section 1557 of the Patient Protection and Affordable Care Act (ACA), Title 42 CFR § 489.24 Duty to Provide an 'Appropriate' Medical Screening Evaluation, 42 CFR § 1003, the Emergency Medical Treatment and Active Labor Act ("EMTALA") 42 U.S.C. § 1395dd, The False Claims Act (FCA), 31 U.S.C. §§ 3729–3733 and The Health Care Quality Improvement Act of 1986, as amended 42 U.S.C. § 11101." (Doc. 42, ¶¶ 9, 37–61, 118–260). He additionally alleges state law claims of negligence, negligent supervision, fraudulent misrepresentation, libel, negligent infliction of emotional distress, and tortious interference with a business relationship. *Id.* ¶¶ 62–117, 261–308. Defendants' motions to dismiss the amended complaint are before the court. (Docs. 47, 48, 49). Plaintiff filed a response in opposition (Doc. 50), and Defendants replied (Docs. 51, 53). The well-pleaded factual allegations in Plaintiff's Amended Complaint are stated below and are assumed to be true for purposes of the instant motions.

A. *August 17, 2015 Incident*

Between 1:00 and 1:30 a.m. on August 17, 2015, Plaintiff went to Jackson Hospital's emergency room for complaints of severe back pain and high blood pressure. (Doc. 42, ¶ 13). Plaintiff was initially triaged, taken to a room, and placed on a gurney. *Id.* ¶ 14. A short male came into the room, whom Plaintiff later

4

determined was Dr. Sample, and was verbally aggressive toward Plaintiff.  *Id.* ¶¶ 14,

15.  Plaintiff feared for his safety and left Jackson Hospital.  *Id.* ¶ 15.  Plaintiff sought

treatment at another hospital on the afternoon of August 17, 2015.  *Id.* ¶ 17.  Plaintiff

made a complaint to Jackson Hospital that day about the incident with Dr. Sample.

*Id.* ¶ 16. On September 30, 2015, Plaintiff was purportedly informed that Dr. O'Mara

suspended Dr. Sample for twenty-one days without pay because of the incident.  *Id.*

¶ 18.  Plaintiff later learned that the attending physician's name listed on his medical

records was changed. *Id.* ¶ 28.

   B. *Thanksgiving Day Incident*

   Plaintiff presented to Jackson Hospital's emergency room for treatment on

November 26, 2015, and was treated during this visit by Dr. O'Mara.  *Id.* ¶ 19.  When

asked, Plaintiff told Dr. O'Mara that his primary care physician was Dr. Ogunbi.  *Id.*

On December 5, 2015, Plaintiff received a letter from Dr. Ogunbi stating he would

no longer treat Plaintiff.   *Id.* ¶ 20.   On December 7, 2015, Plaintiff called Dr.

Ogunbi's office to inquire why Dr. Ogunbi would no longer be his treating

physician, and he was told that doctors from Jackson Hospital's emergency room

reported that Plaintiff was belligerent and had to be escorted off Jackson Hospital's

premises on Thanksgiving Day 2015. *Id.* ¶¶ 21, 22.  Plaintiff alleges the report of the

Thanksgiving Day incident was false. *Id.* ¶ 23.  On March 16, 2016, Plaintiff spoke

with the Chief of Security for Jackson Hospital who stated there were no security

incidents on November 26, 2015 (Thanksgiving Day 2015). *Id.* ¶ 29; *see also* Doc. 43-4.

C. *Plaintiff's Subsequent Treating Doctors*

On or about December 17, 2015, Plaintiff began treating with Dr. Preet Kiran for pain management. *Id.* ¶ 24. When Plaintiff returned for a follow-up visit to Dr. Kiran on January 14, 2016, Plaintiff states Dr. Kiran was rude to him and refused to treat him. *Id.* ¶ 25. Plaintiff began treating with Dr. Steven Allen for pain care management on January 23, 2016. *Id.* ¶ 19. In September 2016, Plaintiff saw Dr. Allen to discuss recommendations for his back surgery. *Id.* ¶ 36. The nurse practitioner advised Plaintiff Dr. Allen could no longer treat him because Plaintiff was "doctor shopping," "selling medications on the street," a "drug addict," and "would be arrested by the Montgomery District Attorney's Office." *Id.*

D. *Complaint to the Board and Investigation by Ingram*

Plaintiff filed his first complaint with the Alabama Board of Medical Examiners on February 20, 2016. *Id.* ¶ 27. Plaintiff received a letter in April 2016 from Larry Dixon about an investigation of doctor shopping conducted by Investigator Stan Ingram. *Id.* ¶ 30. Ingram is the Chief Investigator with the Alabama Board of Medical Examiners. *Id.* ¶ 8. Plaintiff called and spoke with Dixon who said a new investigation would be conducted with a different investigator. *Id.* ¶ 30. Ingram called Plaintiff to state he was reopening the case and

6

conducting the new investigation. *Id.* ¶ 31.  Plaintiff called Ingram several weeks later to follow up on the investigation and Ingram said he was focused on the complaints about Dr. Sample and Dr. Farah.  *Id.* ¶ 33.  Plaintiff received a letter in August 2016 from the Board regarding the outcome of the investigation of the complaints into both Dr. Sample and Dr. Farah. *Id.* ¶ 34.

Plaintiff filed exhibits to his complaint including his resume (Doc. 43-1), an October 2015 letter from the Social Security Administration finding that his disability is continuing (Doc. 43-2), medical records dated 2014, 2015, and 2016 with reports of MRIs and CT scans of his lumbar spine showing disc bulges at multiple levels (Doc. 43-3), and a September 2016 letter to Plaintiff from Drs. William O. Sargeant, D.O. and John K. Porter, D.O. declining to provide professional services as his physician (Doc. 43-6).  Plaintiff also conventionally filed a flash drive with audio recordings.

## IV.   ANALYSIS

In his amended complaint, Plaintiff sues Defendants for federal claims under the Americans with Disabilities Act (ADA) (counts 1, 2, 8, 9), Section 504 of the Rehabilitation Act of 1973 (counts 10, 11), the Patient Protection and Affordable Care Act (counts 12, 13), 42 C.F.R. § 489.24 (Counts 14, 15), EMTALA (counts 16,

17), False Claims Act (count 17),[4] and the Healthcare Quality Improvement Act of 1986 (count 18).  *See* Doc. 42.  Plaintiff's amended complaint also sues Defendants for state law claims of negligence (counts 3, 20), negligent supervision (count 4), fraudulent misrepresentation (counts 5, 6, 7, 19), libel (count 21), negligent infliction of emotional distress (count 22), and tortious interference with a business relationship (count 23).  Defendants move to dismiss all claims.  (Docs. 47, 48, 49).

A.   *Claims against Joe Riley due to be Dismissed*

Other than referencing Joe Riley in the case caption, the introductory paragraph, and identifying him as Jackson Hospital's Chief Executive Officer, Plaintiff makes no other allegation related to Joe Riley or any act or omission on his part in the amended complaint.  *See* Doc. 42. None of the causes of action in the twenty-four counts of the amended complaint are directed against Riley.  Even those counts directed to "all Defendants"—17 (False Claims Act), 21 (libel), 22 (negligent infliction of emotional distress), and 23 (tortious interference with business relationship)—make no mention of Riley.  Additionally, Plaintiff's conclusion to the amended complaint does not reference Riley.  *Id.* at 61.  Accordingly, Plaintiff's amended complaint is due to be dismissed against Defendant Joe Riley for failure to state a claim against Riley.

---

[4] Two counts are labeled 17.  The claim against Jackson Hospital under 42 C.F.R. § 489.24 is count 17, paragraphs 225–236, and the False Claims Act claim against all Defendants is count 17, paragraphs 237–247.  *See* Doc. 42.

B.    *Claims against Drs. Farah, Sample, and O'Mara Abandoned*

Drs. Farah, Sample, and O'Mara filed a Second Motion to Dismiss (Doc. 47) directed to Plaintiff's amended complaint.   Plaintiff failed to file a response in opposition.   The response that Plaintiff did file addresses only the motions of and claims against Defendants, Jackson Hospital, Joe Riley, Alabama Board of Medical Examiners, and Stan Ingram.   *See* (Doc. 50).   Although Plaintiff's pleading states it is in response to "Defendants" (sic) motions, (Doc. 50 at 1), the response does not address the arguments raised by the individual doctor Defendants.[5]

The Eleventh Circuit has held that a party's failure to brief and argue an issue during the proceedings before the district court is grounds for finding that the issue has been abandoned.   *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000).   Moreover, federal courts in this circuit and others have concluded that a plaintiff's failure to respond to or oppose arguments raised in a defendant's pending motion may result in an abandonment of those issues.   *See Humphrey v. City of Headland*, No. 1:12-CV-366-WHA, 2012 WL 2568206, at *2 (M.D. Ala. July 2, 2012) (collecting cases). Accordingly, Drs. Farah, Sample, and O'Mara's motion to dismiss (Doc. 47) is due to be granted for Plaintiff's failure to oppose the motion.   Notwithstanding this recommendation, the court

---

[5] The docket entry for Plaintiff's response reveals the response was filed in opposition to only two motions to dismiss—documents 48 and 49—and was not filed in opposition to document 47, the motion to dismiss filed by Drs. Farah, Sample, and O'Mara.

addresses substantively the claims against the individual doctors below and similarly concludes dismissal is warranted.

    C.   *Federal Claims*

        1.   <u>ADA Claims against Dr. Sample (Counts 1, 8)</u>

In count 1 of the amended complaint, Plaintiff sues Dr. Sample for violating Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Plaintiff alleges he is a qualified individual with a disability because he suffers from a back injury with bulging and herniated disks, chronic obstructive pulmonary disease, post-traumatic stress disorder, anxiety disorder, and high blood pressure.  (Doc. 42, ¶ 39).  Plaintiff alleges Dr. Sample discriminated against him by "denying the Plaintiff the equal opportunity to use or enjoy the public accommodations, goods, services, or facilities, namely the Hospital emergency room department services."  (Doc. 42, ¶ 44).

As argued by Dr. Sample in his motion to dismiss, there can be no claim against him under Title II because this subsection of the ADA applies to public entities, not individuals such as Drs. Sample, Farah, and O'Mara.  (Doc. 47 at 2).  A "public entity" under this subsection refers to "any State or local government," "any department, agency, special purpose district, or other instrumentality of a State or

States or local government;" and "the National Railroad Passenger Corporation, and any commuter authority."  42 U.S.C. § 12131.  Accordingly, the claim against Dr. Sample in count 1 fails.

In count 8, Plaintiff sues Dr. Sample under Title III of the ADA.  This Title precludes discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C.A. § 12182(a).  Although a "public accommodation" is defined to include a health care provider's office or a hospital, *see* 42. U.S.C. § 12181(7)(f), Dr. Sample argues that no private cause of action for monetary damages exists under Title III.  (Doc. 47 at 3).  As a preliminary matter, the court notes that Plaintiff does not plead that Dr. Sample owns or leases the public accommodation where the purported discrimination occurred, nor does Plaintiff allege he was refused treatment because of his disability.

Even if Plaintiff were able to assert such allegations, however, his claim nevertheless fails because the remedies available to him under this subsection are injunctive in nature.  *See* 42 U.S.C. § 12188(a)(1) ("The remedies and procedures set forth in section 2000a-3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter[.]"); *see also* 42 U.S.C. § 2000a-3

("Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a-2 of this title, a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved[.]").

Count 8 of the amended complaint seeks monetary damages, not injunctive relief.  (Doc. 42, ¶ 129).  In his response to the Defendants' initial motion to dismiss, Plaintiff acknowledged that his remedy is limited to injunctive relief on this claim, *see* (Doc. 21 at 5–6, n.7), and yet his amended complaint makes no request for preventative relief in count 8.  Thus, this count is due to be dismissed.

### 2.   ADA Claims against Jackson Hospital and Joe Riley (Counts 2, 9)

As noted above, Title II claims may only be brought against "public entities," which are defined as "any state or local government, [or] any of its departments, agencies, or other instrumentality."  *See* 42 U.S.C. §§ 12131(1)(A) - (B).  Plaintiff does not allege Jackson Hospital is a public entity as defined under Title II, and the hospital does not appear to qualify as such.  Thus, a claim against Jackson Hospital under Title II cannot lie.   Rather, Jackson Hospital is a non-profit Alabama corporation providing public accommodations.  (Doc. 49 at 5–6).

A claim, if any, would be more appropriately raised under Title III, which governs private entities providing public accommodations.  *See* 42 U.S.C.A. §

12181(7) ("the following private entities are considered public accommodations for purposes of this subchapter … a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment").   The problem for Plaintiff remains, however, that the remedies available under Title III are preventative in nature, and yet Plaintiff demands compensatory and punitive damages of six million dollars, costs, and fees.  *See* (Doc. 42, ¶ 141). Like Plaintiff's claim against Dr. Sample in count 8, his claim against Jackson Hospital in count 9 does not seek injunctive relief, but rather only monetary damages.  Moreover, even if Plaintiff sought injunctive relief from Jackson Hospital, such relief is not available for past medical treatment.  *See Jairath v. Dyer*, 154 F.3d 1280, 1283 n.8 (11th Cir. 1998) (no remedy available under the ADA for defendant's past act of refusing treatment). Finally, absent from these claims are any factual allegations demonstrating Plaintiff was discriminated against because of his disability.  Accordingly, Plaintiff's claims against Jackson Hospital in counts 2 and 9 under the ADA fail and are due to be dismissed.

   3.   Claims against Dr. Sample and Jackson Hospital under § 504 of the Rehabilitation Act of 1973 (Counts 10, 11)

In counts 10 and 11 of the amended complaint Plaintiff alleges claims under § 504 of the Rehabilitation Act, 29 U.S.C. § 701, which provides in pertinent part:

> No otherwise qualified individual with a disability in the United
> States, as defined in section 705(20) of this title, shall, solely by reason
> of her or his disability, be excluded from the participation in, be denied
> the benefits of, or be subjected to discrimination under any program
> or activity receiving Federal financial assistance.

29 U.S.C. § 794. A "qualified individual with a disability" under this section

generally means an individual who "has a physical or mental impairment which for

such individual constitutes or results in a substantial impediment to employment."

29 U.S.C. § 705(2)(A)(i). To establish a right to compensatory damages pursuant to

§ 504 of the Rehabilitation Act, a plaintiff must allege that he is a qualified individual

with a disability who was excluded from participation in or denied the benefits of a

defendant's services, programs, or activities, or otherwise discriminated against on

account of his disability, and that the exclusion or denial was the result of intentional

discrimination. *Martin v. Halifax Healthcare Sys.*, 621 F. App'x 594, 601 (11th Cir.

2015) (citing *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) and *Liese v.*

*Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 344 (11th Cir. 2012)).

The Eleventh Circuit has recognized that any claim for compensatory

damages under the Rehabilitation Act requires a showing by a preponderance that

the hospital's alleged conduct was the result of intentional discrimination. *Liese*,

701 F.3d at 344. In analyzing what is required to prove "intentional discrimination,"

the *Liese* court concluded that discriminatory intent in these circumstances means

"deliberate indifference," which the court defined in the Rehabilitation Act context

14

as occurring when "the defendant knew that harm to a federally protected right was substantially likely and ... failed to act on that likelihood." *Id.* at 344, 348 (citations omitted).

Review of the amended complaint reveals Plaintiff fails to plead factual allegations, as opposed to conclusory statements, to support that he was a qualified individual who was denied services because of his disability. To the contrary, the amended complaint reflects that he was first triaged and then seen by a physician. Nothing about the allegations relating to his interaction with Dr. Sample suggests that he was being discriminated against based upon his disability, nor is there any factual allegation supporting that any purported discrimination was done with deliberate indifference. Thus, Plaintiff's Rehabilitation Act claims in counts 10 and 11 fail.[6]

4.   Claims against Dr. Sample and Jackson Hospital under the Patient Protection and Affordable Care Act (Counts 12, 13)

Counts 12 and 13 of the amended complaint attempt to sue Dr. Sample and Jackson Hospital for violations of the Patient Protection and Affordable Care Act (ACA). "Section 1557 of the ACA prohibits discrimination on the basis of race, color, national origin, sex, age, or disability 'under any health program or activity ... receiving Federal financial assistance.'" *Griffin v. Verizon Commc'ns Inc.*, No.

---

[6] Dr. Sample's motion to dismiss does not directly address the Rehabilitation Act claims, but his motion adopts the arguments raised in the other Defendants' motions. *See* (Doc. 47 at 15).

1:16-CV-00080-AT, 2017 WL 6350596, at *3 (N.D. Ga. Sept. 26, 2017) (citing 42 U.S.C. § 18116(a)).  Among other statutes, the ACA expressly incorporates Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, which prohibits discrimination on the basis of disability.  *Id.*  As noted above, Plaintiff's Rehabilitation Act claims fail, and thus to the extent that Plaintiff relies on its Rehabilitation Act claims for his ACA claims, the ACA claims must similarly fail.  Plaintiff's allegations in counts 12 and 13 for the most part mirror the allegations in his Rehabilitation Act claims and do not offer any additional factual basis to support the ACA claims.  Accordingly, the undersigned recommends that counts 12 and 13 be dismissed.

### 5.   EMTALA Claims against Dr. Sample (Counts 14, 16)

In count 16, Plaintiff attempts to state a cause of action against Dr. Sample for violation of the Emergency Medical Treatment and Active Labor Act (EMTALA) contained in 42 U.S.C. § 1395dd, *et seq.*  Plaintiff re-states essentially the same claim in count 14 citing 42 C.F.R. § 489.24, which is an administrative regulation that corresponds to the EMTALA statute.  Both claims fail for the reasons that follow.

In general, EMTALA requires a hospital emergency department to provide a patient with an appropriate medical screening to determine if an emergency condition exists.  42 U.S.C. § 1395dd(a).  If the hospital determines an emergency condition exists, the hospital must provide treatment or make arrangements for an appropriate transfer.  *Id.* § 1395dd(b).  EMTALA prohibits a hospital's delay in

medical screening or further examination or treatment to inquire about a patient's method of payment or insurance status. *Id.* § 1395dd(h).

The enforcement provision of the civil statute provides for a cause of action against a hospital, but not an individual physician. *See* 42 U.S.C. § 1395dd(d)(2)(A) ("Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action *against the participating hospital*, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.") (emphasis added).  Courts in this circuit have held that no private cause of action exists under EMTALA against a physician. *See Williams v. Women's Healthcare of Dothan, P.C.*, No. 1:09-CV-873-WKW, 2010 WL 2025405, at *4 (M.D. Ala. May 19, 2010) (finding EMTALA does not provide a right for relief against individual physicians); *Holcomb v. Monahan*, 807 F. Supp. 1526, 1531 (M.D. Ala. 1992) (section 1395dd(d)(2)(A) only provides for a private claim for a violation of this section against a participating hospital and makes no provision for a suit against the responsible physician).  It is therefore recommended that the EMTALA claims against Dr. Sample in counts 14 and 16 be dismissed.

6.    EMTALA Claims against Jackson Hospital (Counts 15, 17)

Although the EMTALA statute provides for a private cause of action against a hospital, Plaintiff's claims in counts 15 and 17 (¶¶ 225–36) against Jackson

Hospital nevertheless fail. Plaintiff claims he did not receive medical screening as required by the EMTALA.

> In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

42 U.S.C. § 1395dd(a). An "emergency medical condition" under this subsection means "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in: (i) placing the health of the individual … in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part." 42 U.S.C. § 1395dd (e)(1)(A).

Plaintiff's allegations do not support he was suffering from an emergency medical condition as defined by the statute. In fact, he alleges he was triaged upon arrival. When he chose to leave Jackson Hospital, he went to another hospital and obtained treatment. Nothing in his allegations suggests a condition that would have resulted in in placing him in serious jeopardy or impairment of function.

EMTALA prohibits a hospital from delaying medical screening or treatment in order to inquire about payment or insurance status. 42 U.S.C. § 1395dd(h).

However, Plaintiff makes no claim that his medical screening was delayed due to a request or inquiry about payment or insurance.  Plaintiff alleges he presented to the hospital, was triaged, was seen by Dr. Sample whom he alleges was aggressive toward him, and he left and sought treatment elsewhere.  Plaintiff's allegations do not state a claim for violation of EMTALA and are due to be dismissed.

### 7.   Claims against all Defendants under False Claims Act (Count 17)

In count 17 (¶¶ 237–47), Plaintiff sues Defendants for alleged violations of the False Claims Act (FCA), 31 U.S.C. §§ 3729–3733.  As a preliminary matter, Plaintiff fails to respond to the Defendants' arguments regarding his FCA claim, *see* (Doc. 50), and thus the FCA claim could be considered abandoned.  *See Coal. for the Abolition of Marijuana Prohibition*, 219 F.3d at 1326.

Liability under the FCA arises when any person "(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; … or (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government."  31 U.S.C. § 3729.  The FCA permits a private

individual, called a *qui tam*[7] "relator," to file a civil action against, and recover damages on behalf of the United States from, any person who violates a provision of the Act. *Timson v. Sampson*, 518 F.3d 870, 872 (11th Cir. 2008).  A civil action for false claims "shall be brought in the name of the Government."  31 U.S.C. § 3730.  The violations claimed by Plaintiff in his FCA claim are that Defendants changed the doctor's name listed in his medical record from his August 17, 2015 visit to Jackson Hospital, fraudulently billed for services not rendered, and falsely accused Plaintiff of security incidents.  Additionally, he claims that the Board and its investigators accused him of "doctor shopping," "selling his medication on the street," and being a "drug addict" instead of investigating his complaints against the hospital and its doctors.  (Doc. 42, ¶¶ 241, 242).

An FCA claim must be plead with specificity, including facts as to time, place, and substance of the defendant's alleged fraud.  *See U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1308 (11th Cir. 2002) (applying pleading requirements of Rule 9(b) to FCA claim).  Here, Plaintiff's allegations fail to meet the heightened pleading standards of an FCA claim.  Plaintiff fails to identify any record submitted to the government for payment that was false.  He generally alleges, without any

---

[7] "*Qui tam* is short for '*qui tam pro domino rege quam pro se ipso in hac parte sequitur*,' which means 'who pursues this action on our Lord the King's behalf as well as his own.'" *Timson v. Sampson*, 518 F.3d 870, 872 n.1 (11th Cir. 2008) (quoting *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1237 n. 1 (11th Cir. 1999)).

specificity, that the Defendants changed the doctor's name on his patient records from his August 17, 2015 visit.  He does not allege any such changed record was submitted to the government for payment.  He fails to allege the who, what, where, when and how of fraudulent submissions to the government as required by Rule 9(b).  *See Britton ex el. v. Lincare, Inc.*, 634 F. App'x 238, 241 (2015).

Moreover, the Eleventh Circuit has explained:

> To maintain a *qui tam* action under the FCA, a private party must satisfy several procedural requirements. *See* 31 U.S.C. § 3730(b)(1), (b)(2), (b)(4)(A), (b)(4)(B). Specifically, a private party must first bring the action in the name of the United States government and must have served upon the government "[a] copy of the complaint and written disclosure of substantially all material evidence and information the person possesses." 31 U.S.C. §§ 3730(b)(1) and (b)(2). The complaint also must be filed "in camera, [and] shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders." § 3730(b)(2). Within 60 days of service, the government must choose either to "intervene and proceed with the action," or notify the court that it declines to intervene, in which case the individual obtains the right to proceed with the *qui tam* action. § 3730(b)(4).

*Foster v. Savannah Commc'n*, 140 F. App'x 905, 908 (11th Cir. 2005) (citations omitted).  A failure to comply with the procedural requirements of filing a *qui tam* action under the FCA necessitates dismissal.  *Id.*  It is apparent from the face of Plaintiff's amended complaint that he did not comply with the procedural requirements of this statute.  The action was not brought in the government's name, it was not filed under seal, and there is no indication he first served it on the United

States so as to allow the government time to choose whether to intervene.  Thus, dismissal of count 17 (¶¶ 237–47) is warranted.

> 8.    Claims against the Alabama Board of Medical Examiners and Stan Ingram under the Healthcare Quality Improvement Act of 1986 (Count 18)

Count 18 attempts to state a cause of action against the Alabama Board of Medical Examiners (the Board) and its investigator Stan Ingram for violations of the "Healthcare Quality Improvement Act of 1986 [HCQIA], as Amended 42 U.S.C. § 11111." (Doc. 42, ¶¶ 248–60).  "Congress enacted the HCQIA to address the rising problem of medical malpractice and the ability of incompetent doctors to move between states without having their prior practice records follow them and to create a presumptive immunity from monetary damages awarded against participants in the peer review process." *Ming Wei Liu v. Bd. of Trustees of Univ. of Ala.*, 330 F. App'x 775, 779 (11th Cir. 2009) (citing 42 U.S.C. §§ 11101–11111).  As noted by the Board and Ingram in their motion to dismiss, *see* (Doc. 48 at 7), Plaintiff's allegations in count 18 begin with the following incomplete statement: "The Healthcare Quality Improvement Act of 1986 states that the Alabama Board of Medical Examiners should".   (Doc. 42, ¶ 249).   Plaintiff fails to allege a basis for liability against these Defendants on this claim.

In general, Section 11111 limits liability for professional review actions.  42 U.S.C. § 11111(a).  The limited exception is in the event that the Secretary of Health

22

and Human Services has reason to believe that a health care entity has failed to report information in accordance with section 11133(a) of this title. *Id.* § 11111(b). In such circumstances, the "Secretary" is empowered to conduct an investigation. *Id.* Section 11111 does not apply to the Board Defendants or their investigation, nor does it give rise to a private cause of action.

The Board further contends it is entitled to Eleventh Amendment immunity as an "arm of the State." *See Waltz v. Herlihy*, 682 F. Supp. 501, 503 (S.D. Ala. 1988), *aff'd*, 871 F.2d 123 (11th Cir. 1989) (dismissing a complaint against the Alabama Board of Medical Examiners under an Eleventh Amendment sovereign immunity claim). With regard to Ingram, the Eleventh Amendment would similarly preclude claims against the individual Defendant for damages to the extent such claims are based upon the actions he took in his official capacity as an employee of the Defendant state agency. *Id.* at 503. In response, Plaintiff summarily responds that these Defendants are not entitled to immunity because they acted willfully, fraudulently, and in bad faith. (Doc. 50 at 19). In his amended complaint, Plaintiff alleges Defendants acted "willfully, wantonly, negligently, recklessly and/or under circumstances of malice, insult, rudeness, oppression, aggravation, and/or in knowing violation of the Plaintiffs rights." (Doc. 42, ¶ 254). These conclusory allegations, without supporting facts, are insufficient to overcome the Board and Ingram's entitlement to immunity. Count 18 is due to be dismissed.

D.    *State Law Claims (Counts 3, 4, 5, 6, 7, 19, 20, 21, 22, 23)*

If the court adopts the recommendations above that all federal claims are due to be dismissed, there are no claims over which the court has original jurisdiction. **Accordingly, it is further recommended that the court decline to exercise supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367(c)(3).** *See Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir.1999) (dismissal of state law claims pursuant to § 1367(c) is encouraged if federal claims dismissed prior to trial).

In the event any of the federal claims remain (or should the Court elect to reach their merits), the state law claims nevertheless are due to be dismissed, as discussed below.

1.    Negligence against Dr. Sample and Jackson Hospital (Counts 3, 4)

Counts 3 and 4 attempt to state causes of action against Dr. Sample and Jackson Hospital for negligence and negligent supervision, respectively.   In Alabama, any claim "for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, whether resulting from acts or omissions in providing health care, or the hiring, training, supervision, retention, or termination of care givers," is governed by the Alabama Medical Liability Act. ALA. CODE § 6-5-551 (1975).  The Act requires a plaintiff's complaint to include "a detailed specification and factual description of each act and

24

omission alleged by plaintiff to render the health care provider liable." *Id.* "Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted." *Id.*

Here, Plaintiff alleges Dr. Sample breached his duty to Plaintiff by becoming aggressive to him and refusing to treat him. (Doc. 42, ¶¶ 63, 68). Plaintiff alleges he was triaged, but also claims Dr. Sample refused to perform a medical screening examination and to stabilize his condition/symptoms. *Id*. ¶ 64. As for Jackson Hospital, Plaintiff alleges it is liable in failing to "follow up and/or reprimand Dr. Sample for his abusive and inadequate treatment of patients in the Hospital's emergency room." *Id.* ¶ 80. These minimal allegations fail to include the specificity contemplated by § 6-5-551 to establish liability on behalf of Dr. Sample or Jackson Hospital on these claims. Additionally, Plaintiff does not allege sufficient facts to give rise to the hospital's liability for the conduct of the physician. *See Bain v. Colbert Cty. Nw. Ala. Health Care Auth.*, 233 So. 3d 945, 965–66 (Ala. 2017), *reh'g denied*, (Apr. 21, 2017) ("In light of the distinct duties owed patients by hospitals and physicians and [plaintiff's] failure to identify a regulation that imposes a specific duty upon a hospital to provide its patients with emergency medical physician services that are within the applicable standard of care, … we conclude that [plaintiff] has failed to demonstrate that the Board's regulations impose a duty on a

25

hospital to provide emergency physician services that are within the applicable standard of care.")

 2. Fraudulent Misrepresentation against Defendants (Counts 5, 6, 7, and 19)

Plaintiff's claims for fraudulent misrepresentation in counts 5, 6, 7, and 19 fail as they do not meet the heightened pleading requirements for a fraud claim. Rule 9 requires that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). It also states that "[a]n allegation of time or place is material when testing the sufficiency of a pleading." Fed. R. Civ. P. 9(f).

 3. State law Claims against Alabama Board of Medical Examiners and Stan Ingram (Counts 20, 21, 22, 23)

"Under Ala. Const. of 1901, § 14, the State of Alabama has absolute immunity from lawsuits. This absolute immunity extends to arms or agencies of the state." *Ex parte Tuscaloosa Ct*y., 796 So. 2d 1100, 1103 (Ala. 2000). Thus the Board would be entitled to immunity from Plaintiff's state law claims under the Alabama Constitution, which provides in section 14 that the State of Alabama shall never be made a defendant in any court of law or equity. Thus, even if the court were inclined to exercise supplemental jurisdiction over the state law claims, dismissal of the state law claims against the Board and Ingram is warranted on the basis of immunity,

 4. Libel against all Defendants (Count 21)

In order to state a cause of action for libel or slander under Alabama law, a plaintiff must allege "facts showing that the alleged defamatory matter was published or spoken of the plaintiff." ALA. CODE § 6-5-182.   In his amended complaint, Plaintiff alleges he received a letter from the hospital on December 5, 2016, *see* Doc. 42, ¶ 285, but he fails to state what was contained in the letter.   He later alleges Jackson Hospital published a false statement with regard to his behavior and demeanor on November 26, 2015. *Id.* ¶ 287.   The implication is the 2016 letter contained defamatory remarks about his 2015 conduct.   He summarily alleges the false statement published by Jackson Hospital defamed and slandered his reputation because it was placed in his medical file for future doctors to see. *Id.* ¶ 288.   He claims the slandering of his reputation caused him to be refused to be treated by several physicians. *Id.* ¶ 289.   He provides no detail of what was contained in the letter.   Other than vaguely referencing that a false statement was placed in his medical file, Plaintiff does not plead how and to whom the allegedly false statement was published.   Furthermore, count 21 is silent as to any act or omission of the individual doctors or the Board Defendants.   Count 21 is due to be dismissed as to all Defendants for failure to state a claim.

5.   Negligent Infliction of Emotional Distress (Count 22)

In count 22, Plaintiff claims that he suffered negligent infliction of emotional distress due to the actions of all Defendants. *See* Doc. 42, ¶¶ 290–301.   Under

Alabama law, there is no action for negligent infliction of emotional distress; only intentional infliction of emotional distress is actionable. *Allen v. Walker*, 569 So. 2d 350, 352 (Ala. 1990).

### 6.    Tortious Interference with a Business Relationship (Count 23)

To state a cause of action under Alabama law for tortious interference with a business relationship, a plaintiff must allege "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *White Sands Grp., L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009). The allegations in count 23 fail to establish the existence of a business relationship between Plaintiff and any of his physicians.  Count 23 is due to be dismissed for failure to state a claim.

## V.    CONCLUSION AND RECOMMENDATION

For the reasons stated, the Magistrate Judge **RECOMMENDS**:

A.    Dr. Farah, Dr. Sample, and Dr. O'Mara's Second Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. 47) be **granted**;

B.    Defendants Alabama Board of Medical Examiners' and Stan Ingram's Motion to Dismiss First Amended Complaint (Doc. 48) be **granted**; and

C.    Jackson Hospital and Joe Riley's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 49) be **granted**.

As discussed above, the recommended granting of these motions is with respect to Plaintiff's federal law claims. As to his state law claims, the Court should decline to exercise supplemental jurisdiction, and those claims should be dismissed without prejudice. Because Plaintiff has already been given an opportunity to amend his complaint to no avail, and nothing in his responsive pleading indicates further amendment would result in a viable cause of action against Defendants in this court, it is **recommended** the court dismiss Plaintiff's Amended Complaint as set forth above and close the case.

## VI.   NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. Accordingly, it is hereby **ORDERED** that any objections to the Report and Recommendation shall be filed on or before **September 6, 2018**. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; see also 28 U.S.C. § 636(b)(1).

**Respectfully recommended** this 23rd day of August 2018.

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE